# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAUREN KNIGHT, | Case No. 1:19-cv-00452-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL, ENTERING JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY, AND DIRECTING CLERK OF COURT TO CLOSE THIS ACTION |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | (ECF Nos. 17, 22, 24[1]) |

## I.

## INTRODUCTION

Plaintiff Lauren Knight ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[2]

For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

---

[1] Plaintiff filed two reply briefs on May 19, 2019.  (ECF Nos. 23, 24.)  The second brief does not indicate that it is an amended brief or address why a second brief was filed.  The Court shall disregard the first brief filed (ECF No. 23) and considers the second brief filed (ECF No. 24) to be Plaintiff's reply.

[2] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 7, 8.)

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed a Title XVI application for supplemental security income on November 20, 2015. (AR 74.) Plaintiff's applications were initially denied on May 4, 2016, and denied upon reconsideration on August 9, 2016. (AR 93-96; 102-106.) Plaintiff requested and received a hearing before Administrative Law Judge Vincent A. Misenti ("the ALJ"). Plaintiff appeared for a hearing on October 26, 2017. (AR 36-61.) On March 28, 2018, the ALJ found that Plaintiff was not disabled. (AR 15-30.) The Appeals Council denied Plaintiff's request for review on December 21, 2018. (AR 7-8.)

### A.     Hearing Testimony

Plaintiff appeared and testified at the October 26, 2017 hearing with counsel appearing by telephone. (AR 38, 40-55, 58.) At the hearing, Plaintiff amended her alleged onset date to November 20, 2015. (AR 40.) Plaintiff is 5' 4" tall and weighs about 230 pounds. (AR 40.) She is right handed. (AR 41.) Plaintiff is married and lives in a house with her mother and two children, ages six and thirteen. (AR 41.) She is currently separated from her spouse and receives food stamps. (AR 41.) Plaintiff has a high school education. (AR 42.)

Plaintiff has a driver's license and drives five times per week to pick up her son from school. (AR 42.)

Plaintiff is unable to work due to her back disorder. (AR 42.) She started having symptoms in 2003 and her legs went numb when she was pregnant with her daughter. (AR 42-43.) She thought it was because she was pregnant, but it just kept getting worse and worse to where she could not feel her leg and she could not get out of bed because of the pain. (AR 43.) Plaintiff has stabbing pain in the middle of her back and her leg is completely numb. (AR 43.) Plaintiff takes a lot of pain medication due to the pain and receives epidurals every three months that do not help. (AR 43.) When Plaintiff is in pain she will take her pain medication three times a day. (AR 43.) Her pain is still a six or seven out of ten on the pain medication. (AR 43.) The epidurals do not help her pain. (AR 44.) She just had an x-ray and MRI of her back and they are talking about sending her to see a surgeon again. (AR 44.) Plaintiff has not had

surgery.  (AR 44.)  She uses a TENS unit but it doe not help.  (AR 44.)  Plaintiff went to physical therapy in the past but it did not help.  (AR 44-45.)  Plaintiff has not participated in pain management.  (AR 45.)  When Plaintiff is in a lot of pain she will use a wheel chair but tries not to because it is embarrassing.  (AR 45.)  The wheelchair was not prescribed she bought it on her own.  (AR 45.)  Plaintiff has been prescribed amphetamines but does not have a problem with using them.  (AR 55.)

Lifting, bending, movement, and activity make her back pain worse.  (AR 45.)  When she is experiencing back pain she will take her medication and go to bed, putting a heating pad on her back.  (AR 45.)  Plaintiff does not know why she has back pain.  (AR 45-46.)  Plaintiff can sit for thirty minutes at one time.  (AR 46.)  She can only stand for five to ten minutes and has to lean over the sink to brush her teeth.  (AR 46.)  Plaintiff can walk for two to five minutes.  (AR 46.)  She can lift two to five pounds.  (AR 46.)  When she is in excruciating pain she needs help with her personal care.  (AR 47.)  At least once a month if not more she is in excruciating pain. (AR 46.)  When her pain is not excruciating she is able to do her own personal care.  (AR 46.) Plaintiff tries to do household chores but her daughter does the majority to help her out.  (AR 47.)  Both of her children are in school, but she does not help them get ready.  (AR 47.)  She does not cook or do laundry.  (AR 47.)  Her daughter does it.  (AR 47.)  Plaintiff helps her son with his homework but she cannot help her daughter because the work is too hard.  (AR 48.)

Plaintiff does not do any chores around the home.  (AR 48.)  She used to do dishes but now she cannot stand that long so her daughter does the dishes.  (AR 48.)  Plaintiff wakes up around 7:30 and kisses her children goodbye and goes back to bed until 10:00 or 11:00.  (AR 48.)  She will heat up her coffee which is left in the microwave for her and go back and lay down in bed to drink her coffee.  (AR 48.)  If Plaintiff has to go pick up her son, she will go in her pajamas.  (AR 48.)  Plaintiff drives back home and sits at the table helping him with his homework.  (AR 48.)  When Plaintiff's daughter comes home from school she will take over and Plaintiff will usually go back to bed.  (AR 48.)

Plaintiff leaves the house to pick up her and will go to her daughter's activities if she has to.  (AR 48.)  She tries not to go anywhere else.  (AR 48.)  If she does go somewhere she will

1  usually be in her pajamas and it will be to pick up her son or to drive to the grocery store and
2  have her daughter run in to get whatever is needed.  (AR 48-49.)  Plaintiff does not shop.  (AR
3  49.)  She tries to take her children to do things on the weekend but is usually the one sitting out
4  not able to participate.  (AR 49.)

5  Plaintiff's anxiety disorder is horrible.  (AR 49.)  She gets very nervous and upset, she
6  was very nervous during the hearing.  (AR 49.)  She does not like to be around people at all or
7  talking to people.  (AR 49.)  Plaintiff sees a counselor every week and her primary care doctor
8  about once a month.  (AR 49.)  Dr. Diego is Plaintiff's primary care doctor and Plaintiff has been
9  seeing her about once a month since she was seven.  (AR 58.)  Plaintiff takes medication for her
10  anxiety every day and they make her a little bit tired.  (AR 49-50.)  They do reduce her anxiety a
11  little bit.  (AR 50.)  Plaintiff has separation anxiety and is anxious when her mom is not around.
12  (AR 50.)  Being alone makes Plaintiff anxious and she does not like to be alone at all.  (AR 50.)
13  She gets scared, her children even sleep in her room because she gets scared.  (AR 50.)  Plaintiff
14  has anxiety attacks when she is by herself that will last a couple of hours until she is with
15  someone.  (AR 51.)  Her mom calms her down.  (AR 51.)  Plaintiff cannot do anything when she
16  is having an anxiety attack.  (AR 51.)

17  Plaintiff also has depression and cannot concentrate on things very well.  (AR 51.)  She
18  will not get dressed and go out of the house.  (AR 51.)  Plaintiff's mother takes care of the bills.
19  (AR 51.)  Plaintiff is not able to remember things very well.  (AR 51.)  Plaintiff gets frustrated
20  when she cannot do things.  (AR 52.)  It makes her irritable and she will warn everyone that she
21  is irritable.  (AR 52.)  Plaintiff does not sleep very well at all.  (AR 52.)  She is up a lot during
22  the night and then she sleeps late.  (AR 52.)  She sleeps maybe five hours a night.  (AR 52.)

23  Plaintiff has asthma that is controlled with an inhaler and a nebulizer.  (AR 52.)  She uses
24  her nebulizer every three months when she wheezes and cannot breathe.  (AR 52.)  That is
25  usually when they cut the fields down by her house.  (AR 52-53.)  She is unable to do much
26  physical activity because it causes her to not be able to breathe.  (AR 53.)  Plaintiff has muscle
27  spasms in her back.  (AR 53.)  They hurt incredibly bad and she is unable to stand it.  (AR 53.)
28  She is unable to move at all.  (AR 53.)  She does not take medication for the muscle spasms.

(AR 53.)

Plaintiff was diagnosed with ADHD when she was in school and was in special education.  (AR 53-54.)  Plaintiff does not read and write very well.  (AR 54.)  She cannot concentrate at all.  (AR 54.)

A vocational expert, Bonnie Sinclair, also testified at the hearing.  (AR 55-60.)

**B.    ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff has not engaged in substantial gainful activity since the application date of November 20, 2015.

- Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, asthma, obesity, anxiety disorder, depressive disorder, attention-deficit hyperactivity disorder ("ADHD"), and dependent traits.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

- Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) but she can only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs.  She cannot climb ladders or scaffolds.  She must avoid concentrated exposure to fumes odors, dust, gases, poorly ventilated areas, and chemicals.  She is limited to understanding, remembering, and carrying out simple routine and repetitive tasks.  She is able to use judgment on only simple work-related decisions.  She is also limited to no more than occasional interaction with the public.

- Plaintiff is unable to perform any past relevant work.

- Plaintiff was born on July 18, 1986, and was 29 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

- Plaintiff has at least a high school education and is able to communicate in English.

- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is not disabled whether or not Plaintiff has transferable job skills.

- Considering Plaintiff's age, education, work experience, and residual functional capacity there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

- Plaintiff has not been under a disability, as defined in the Social Security Act, since November 20, 2015, the date the application was filed.

(AR 20-30.)

### III.

### LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 416.920; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).   "Substantial evidence" means more than a scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

**IV.**

**DISCUSSION AND ANALYSIS**

Plaintiff argues that the ALJ erred by providing significant weight to the physical and mental residual functional capacity assessments of the one time examiners over the opinions of Dr. Diego, Plaintiff's treating provider.  Plaintiff contends that the ALJ failed to provide the requisite specific and legitimate reasons to reject Dr. Diego's opinions.  Plaintiff also argues that the ALJ erred by failing to provide specific clear and convincing reasons to discredit her symptom testimony.

Defendant counters that the ALJ properly considered the medical evidence and provided multiple specific and legitimate reasons for the weight provided to Dr. Diego's medical opinions.

1 Defendant further contends that the ALJ offered multiple legally sufficient reasons to find that
2 Plaintiff's symptom testimony was not credible.

3    Plaintiff replies that Defendant argues the incorrect legal standards in his opposition.

4    **A.    Physician Opinion**

5    The weight to be given to medical opinions depends upon whether the opinion is
6 proffered by a treating, examining, or non-examining professional.  See Lester v. Chater, 81 F.3d
7 821, 830-831 (9th Cir. 1995).  "Generally, the opinions of examining physicians are afforded
8 more weight than those of non-examining physicians, and the opinions of examining non-
9 treating physicians are afforded less weight than those of treating physicians.  Orn v. Astrue, 495
10 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(1)-(2)).  "If a treating or
11 examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject
12 it by providing specific and legitimate reasons that are supported by substantial evidence."
13 Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)(3)).  The
14 contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific,
15 legitimate reason for rejecting a treating or examining physician's opinion, however, "it may
16 constitute substantial evidence when it is consistent with other independent evidence in the
17 record."  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The ALJ need not accept
18 the opinion of any physician that is brief, conclusory, and unsupported by clinical findings.
19 Thomas, 278 F.3d at 957.

20    Plaintiff argues that the ALJ ignored the MRI findings which documented nerve root
21 impingement.  Defendant counters that the ALJ explicitly acknowledged the objective diagnostic
22 findings in the opinion.  In the opinion, the ALJ noted that "MRIs of her lumbar spine have
23 shown multilevel degenerative changes and disc bulging with multilevel central canal and neural
24 foraminal narrowing as well as S1 nerve root impingement Exhibits IF, 4F, 14F, 20F/3-4 and
25 25F/1-2."  (AR 24.)  Here, the ALJ did not ignore the MRI findings but found that Plaintiff had
26 presented evidence of a serve impairment that could reasonably be expected to cause the alleged
27 symptoms.  (AR 24.)  Plaintiff argues that the nerve root impingement is substantial evidence to
28 support that Plaintiff is disabled, but the question is how the nerve root impingement affects

1   Plaintiff's functional limitations which is the issue that the ALJ is addressing throughout the

2   opinion.

3          Pointing to Plaintiff's MRI results and four citations to treatment notes, Plaintiff argues

4   that the ALJ erred because Dr. Diego's opinion was well supported by the record.  However, the

5   ALJ found that both Dr. Diego's mental capacity assessment and the physical residual

6   assessments were inconsistent with her treatment records and therefore were not supported by

7   the record.  (AR 26, 28.) Defendant argues that substantial evidence supports the multiple

8   specific and legitimate reasons that the ALJ provided for the weight that was given to Dr.

9   Diego's opinions.

10         First, Plaintiff's argument consists mainly of citations to Plaintiff's complaints within the

11  record, but Plaintiff's complaints are not objective evidence of an impairment and the ALJ can

12  reject a physician's opinion that is premised on a claimant's subjective complaints that have been

13  properly discounted.  Fair v. Bowen, 885 F.2d 597, 605 (1989).  Here, for the reasons discussed

14  below, the ALJ properly discounted Plaintiff's symptom testimony.  This Court may not

15  substitute its judgment for that of the Commission and "[t]hus the key question is not whether

16  there is substantial evidence that could support a finding of disability, but whether there is

17  substantial evidence to support the Commissioner's actual finding that claimant is not disabled."

18  Jamerson v. Chater, 112 F.3d 1064, 1067 (9th Cir. 1997).  The Court considers the reasons that

19  the ALJ provided to reject Dr. Diego's opinion.

20         1.    Physical Capacity Opinions

21         The ALJ considered the March 17, 2015 Physical Residual Source Statement; August 10,

22  2017 Physical Medical Source Statement; and August 16, 2016 letter to whom it may concern

23  completed by Dr. Diego, Plaintiff's treating physician.  (AR 26, 423-424, 425, 620-623.)  Dr.

24  Diego opined that Plaintiff was restricted to less than sedentary exertion, could perform no

25  postural activities and very limited manipulative activities, would be off task 25% of the time in

26  a normal workday, would be absent from work more than 4 days per month, and would need to

27  be allowed to shift positions at will, take frequent unscheduled breaks, and elevate her legs.  (AR

28  26-27, 423-424, 620-623.)  The ALJ gave Dr. Diego's opinion little weight finding it internally

1   inconsistent with Dr. Diego's own treatment notes which did not document serious findings or

2   signs that support such extreme limitations.  (AR 27.)

3   Disregarding the actual discussion of Plaintiff's medical records and the ALJ's findings,

4   Plaintiff argues that the ALJ's general comment is not sufficiently detailed to be a specific and

5   legitimate reason to reject Dr. Diego's opinion.  Defendant argues that Plaintiff is inaccurate in

6   arguing that the ALJ's reasons are vague and conclusory and the ALJ properly considered the

7   objective evidence in the record in finding that the medical record generally reflected normal

8   findings.

9   The ALJ considered that during the adjudicative period, while Plaintiff often had back

10   tenderness and a positive straight leg raise sign, overall there were very few clinical signs such as

11   diminished range of motion or abnormal gait documented in the treatment record.  (AR 24.)  In

12   fact, the ALJ pointed to numerous records demonstrating that Plaintiff's musculoskeletal system

13   examination was noted to be normal and she had a normal gait.  (AR 24, 303-304, 1065, 1067,

14   1122-1138.)   The ALJ noted that the medical record also demonstrated that Plaintiff was

15   generally found to have a normal gait.  (AR 24.)

16   The Court considers the records that Plaintiff points to in support of her argument that the

17   ALJ erred in finding that she generally had normal musculoskeletal examinations other than some

18   back tenderness.[3]  On May 7, 2015, Plaintiff was seen by Dr. Diego complaining of back pain for the

19   past week.  (AR 353.)  Dr. Diego noted that Plaintiff had a normal gait and upon examination found

20   Plaintiff had back pain which radiates down the sciatica.  (AR 354.)  On June 18, 2015, Plaintiff saw

21   Dr. Diego who noted that Plaintiff had a normal gait and a backache.  (AR 382.)  Plaintiff was

22   advised to continue her medication but not to take too much and only take as prescribed.  (AR 383.)

23   She was also advised to stay active and do her exercises.  (AR 383.)  Plaintiff saw Dr. Diego on

24   February 18, 2016, and musculoskeletal examination notes normal gait, normal station and stability,

25   and a backache (tender to palpation).  (AR 393.)  This evidence tends to support a finding that the

26   ALJ's finding was supported by substantial evidence as only the first appointment found more than

27

28   [3] The Court considers that objective findings on examination, rather than Plaintiff's complaints at the visit.

1  tenderness on palpation.

2      Further review of Dr. Diego's treatment notes demonstrates that substantial evidence

3  supports the ALJ's finding that her treatment notes do not show objective findings that support

4  the severity of the limitations opined.   Dr. Diego's treatment records beginning in 2015

5  consistently document that on musculoskeletal examination Plaintiff was found to have a normal

6  gait and tender back with no other objective findings.  On February 12, 2015, Plaintiff was seen

7  by Dr. Diego and is noted to have a normal gait and tender back.  (AR 356.)  Plaintiff was found

8  to be alert and oriented with appropriate mood and affect.  (AR 356.)  She had normal insight

9  and judgment.  (AR 356.)  Neurologic activity is normal.  (AR 356.)

10      On March 17, 2015, Plaintiff was noted to have a normal gait and a backache, but she

11  was also found to be walking with a limp and "wabling," with decreased range of motion to

12  flexion and extension.  (AR 364.)  Plaintiff's psychological findings remain the same.  (AR 363.)

13  Plaintiff was advised to attend physical therapy but declined stating it would only make her

14  worse.  (AR 364.)  Neurologic activity is normal.  (AR 363.)

15      Plaintiff was seen on April 15, 2015 and is noted to be alert and oriented with appropriate

16  mood and affect.  (AR 366.)  Judgment and insight are normal.  (AR 366.)  Plaintiff had a normal

17  gait and backache.  (AR 366.)  She is noted to have a tender lumbar spine with pain on flexion

18  and extension.  (AR 366.)  Neurologic activity is normal.  (AR 366.)

19      On April 28, 2015, Plaintiff was noted to have a normal gait and backache.  (AR 396.)

20  She was tender to palpation and tender to rotation, with pain in the joint involving the pelvic

21  region and the thigh area and tenderness in the sciatic area.  (AR 396.)   The record notes

22  cervicalgia.  (AR 396.)  Plaintiff was noted to have anxiety, but was alert and oriented with

23  appropriate mood and affect.   (AR 396.)   Judgment and insight were normal.   (AR 396.)

24  Neurologic activity was normal.  (AR 396.)

25      On May 7, 2015, Plaintiff complained of back pain for the past week and is noted to have

26  a normal gait and back pain that radiates down the sciatica.  (AR 354.)  Plaintiff was alert and

27  oriented with appropriate mood and affect.  (AR 354.)  Judgment and insight were normal.  (AR

28  354.) Neurologic activity is normal.  (AR 354.)

1    Plaintiff is noted to have normal gait and a backache on June 18, 2015.  (AR 382.)

2    Anxiety is noted, but Plaintiff was alert and oriented with appropriate mood and affect.  (AR

3    382.)  She had normal judgment and insight.  (AR 382.)  Neurologic activity is noted to be

4    normal.  (AR 382.)

5    Plaintiff is next seen on September 19, 2015, and is noted to have a normal gait and back

6    pain with tenderness in the lumbar area that is worse to flexion and extension.  (AR 406.)  Again

7    anxiety is noted but Plaintiff is alert and oriented with appropriate mood and affect.  (AR 378.)

8    Judgement and insight are normal.  (AR 378.)  Neurologic activity is normal.  (AR 378.)

9    On November 5, 2015, Plaintiff stated that she was trying very hard to comply with her

10   pain medication and requested an epidural injection.  (AR 377.)  She is noted to have a normal

11   gait and back pain.  (AR 378.)  Psychiatric and neurologic findings remain the same.  (AR 378.)

12   She was advised to take her medication for pain and maintain a good level of activity that does

13   not cause a strain on her back because no activity was not good for her back.  (AR 379.)

14   Plaintiff alleges disability that began on November 20, 2015.  (AR 40.)  On November

15   30, 2015, Plaintiff was seen after falling at the store and being found to have an ankle sprain.

16   (AR 367.)  She was walking on crutches, but is noted to have a normal gait.  (AR 371.)  Her right

17   ankle was tender to palpation and movement and had edema.  (AR 371.)  Psychiatric and

18   neurologic findings remain the same.  (AR 371.)  The record notes that Plaintiff's medication is

19   helping her attention deficit disorder.  (AR 372.)

20   On December 23, 2015, Plaintiff's x-ray showed an ankle chip and Dr. Diego diagnosed

21   a fracture of Plaintiff's ankle.  (AR 397, 401.)  Musculoskeletal examination shows a normal gait

22   and backache with tenderness to palpation in the lumbar are and pain on flexion and extension.

23   (AR 401.)  Plaintiff had pain in the joint involving the foot and ankle with tenderness to the

24   ankle on rotation and palpation.  (AR 401.)  Plaintiff is noted to be mentally alert and neurologic

25   activity is normal.  (AR 401.)  Psychiatric findings remain the same.  (AR 401.)

26   On February 18, 2016, Plaintiff reported that her medication helps her to be more focused

27   on what she is doing.  (AR 388.)  Plaintiff is noted to have a normal gait, and normal station and

28   stability.  (AR 393.)  She has a backache and tenderness to palpation.  (AR 393.)  Plaintiff was

1   alert and oriented with appropriate mood and affect.  (AR 393.)  Judgment and insight were

2   normal.  (AR 393.)  Plaintiff had normal attention span and concentration.  (AR 393.)

3        Plaintiff was seen on May 19, 2016, and she thought she might be pregnant.  (AR 812.)

4   Plaintiff had a normal gait and normal station and stability.  (AR 813.)  Her lumbar spine was

5   tender to palpation with pain on flexion and extension.  (AR 813.)  She is noted to be anxious

6   and restless, but psychological examination remains the same and Plaintiff is found to have

7   normal attention span and concentration.  (AR 814.)

8        Plaintiff was seen on August 4, 2016, but there are no examination findings.  (AR 795.)

9   On August 18, 2016, Dr. Diego wrote a letter stating that Plaintiff had been her patient for many

10  years and has several mental and physical health issues that prevent her from working.  (AR

11  425.)

12       Plaintiff was next seen on November 14, 2016, for a follow up after a hospital visit.

13  Plaintiff had been side swiped when she pulled out in front of a semi-truck after trying to get a

14  dog off the side of the road.  (AR 739, 1073, 1075.)  Plaintiff was found to have normal gait and

15  normal station and stability.  (AR 746.)  The lumbar spine was tender to palpation with pain to

16  flexion and extension.  (AR 746.)  Psychological findings remain the same, including normal

17  attention span and concentration.  (AR 746.)  Plaintiff is noted to be mentally alert with normal

18  neurologic activity.  (AR 746.)

19       On March 10, 2017, Dr. Diego completed a medical source statement stating that she had

20  seen Plaintiff monthly since February 12, 2015.  (AR 620.)  Plaintiff was diagnosed with severe

21  major depression, anxiety, back pain, and ADD.  (AR 620.)  Plaintiff had back pain that radiates

22  down both legs, feelings of worthlessness, tearful, anxious, nervous, energy loss, and feelings of

23  guilt.  (AR 620.)  Her prognosis was fair.  (AR 620.)  Dr. Diego was unresponsive to the question

24  regarding the characterization of Plaintiff's pain, citing the MRI results.  (AR 620.)  Dr. Diego

25  stated that Plaintiff went to physical therapy and pain management and her pain medications

26  caused a lack of concentration and drowsiness.  (AR 620.)

27       Dr. Diego opined that Plaintiff could not walk any blocks; could sit for thirty minutes at

28  one time; stand for five minutes; stand/walk less than two hours in an eight hour workday and sit

about two hours in an eight hour workday.  (AR 621.)  Plaintiff would need to shift positions between sitting and standing and would need to walk for five minutes every thirty minutes.  (AR 621.)  Plaintiff would need hourly unscheduled breaks due to numbness and pain.  (AR 621.)  She did not need to elevate her legs but would sometimes need to use an assistive device due to imbalance or pain.  (AR 621.)  Plaintiff was never able to lift less than ten pounds or more than ten pounds; she could never twist, stoop/bend, crouch, squat, or climb stairs or ladders.  (AR 622.)  Plaintiff could bilaterally grasp and turn objects and perform fine manipulations fifty percent of an eight hour workday; reach in front of her body twenty percent of an eight hour workday; and reach overhead ten percent of an eight hour workday.  (AR 622.)  Plaintiff would be off task due to attention and concentration more than twenty five percent of a workday and was incapable of even low stress work.  (AR 622.)  Plaintiff would have good days and bad days and would miss more than four days of work per month.  (AR 622.)  Plaintiff's medication can cause blurred vision.  (AR 623.)  These limitations applied since February 12, 2015.  (AR 623.)

Plaintiff was seen by Dr. Diego on March 23, 2017, and reported that her anxiety improved on medication.  (AR 728.)  Anxiety was noted, but Plaintiff was found to be alert and oriented with appropriate mood and affect.  (AR 736.)  Judgment and insight are noted to be normal as is attention span and concentration.  (AR 736.)  Plaintiff is noted to have a normal gait and normal station and stability.  (AR 737.)  Lumbar spine is tender to palpation with pain to flexion and extension.  (AR 737.)  Plaintiff was mentally alert and neurologic activity was normal.  (AR 737.)  It is noted that Plaintiff is on ADD medication so she is more stable.  (AR 737.)

Plaintiff was seen on July 3, 2017; and all findings remain the same.  (AR 775, 777.)  On August 2, 2017, Plaintiffs examination remained the same except that it is noted she has decreased sensory down the right lower extremity.  (AR 719.)  Plaintiff is advised that she might benefit from physical therapy and is advised to get out walking.  (AR 720.)

On August 10, 2017, Dr. Diego completed a mental residual function capacity questionnaire.  (AR 624-626.)  Dr. Diego stated that Plaintiff had been seen monthly since February 12, 2015, and was diagnosed with severe major depression and anxiety.  (AR 624.)

Her prognosis was poor.  (AR 624.)  Plaintiff's symptoms were general feelings of tiredness, dizzy, lightheadedness, blurred vision, moody and sometimes nausea.  (AR 624.)  Plaintiff was not limited in her ability to remember locations and work like procedures or her ability to understand and remember very short and simple instructions.  (AR 624.)  Plaintiff was precluded for 10 percent of an 8 hour workday in her ability to understand and remember detailed instructions.  (AR 624.)  At times, Plaintiff has a hard time remembering instructions on how and when to take her medications and frequently forgets her appointment days and times.  (AR 624.)

Plaintiff is not limited in her ability to carry out very short and simple instructions; sustain an ordinary routine without special supervision; and make simple work-related decisions. (AR 625.)  Five percent of an eight hour workday, Plaintiff is not able to perform activities within a schedule; maintain regular attendance; and be punctual and within customary tolerances. (AR 625.)  Ten percent of the time, Plaintiff is unable to carry out detailed instructions and to work in coordination or in proximity to others without being distracted by them.  (AR 625.) Fifteen percent of the time is unable to maintain attention and concentration for extended periods of time and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.  (AR 625.)  Plaintiff often has a lack of concentration and can get distracted very easily.  (AR 625.)  Plaintiff has no difficulties with social interaction.  (AR 625.)

Five percent of the time, Plaintiff cannot respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation.  (AR 625.)  Ten percent of the time Plaintiff cannot set realistic goals or make plans independently of others.  (AR 625.)  Plaintiff cannot tolerate changes well. (AR 625.)  It causes anxiety and can generate an anxiety attack.  (AR 625.)

Dr. Diego opined that due to Plaintiff's anxiety and depression her behavior can exacerbate her ability to work in a known environment where she is familiar and comfortable. (AR 625.)  Plaintiff is likely to be absent from work and unable to complete an eight hour work day five or more days per month.  (AR 626.)  These limitations began on February 12, 2015.

1 (AR 626.)

2       Substantial evidence in the record supports that ALJ's finding that Dr. Diego's
3 examination findings are inconsistent with the limitations opined in her opinion.  For example,
4 Dr. Diego states that Plaintiff had pain that radiates to both legs and dizziness, but there are no
5 such findings in the record.  Dr. Diego found that Plaintiff may need the use of an assistive
6 device but none were prescribed and the treatment records note normal gait and normal station
7 and stability.  Dr. Diego's March 10, 2017 statement stated that Plaintiff's medications cause
8 lack of concentration, she has difficulty concentrating, and remembering thing but again this is
9 inconsistent with the medical records which do not include any findings indicating impaired
10 concentration or memory.  At the time that Dr. Diego wrote her opinion she had consistently
11 found since February 2016 that Plaintiff had normal attention span and concentration despite
12 noting that Plaintiff was anxious.  (AR 393, 746, 813.)  These findings continued after the March
13 10, 2017 opinion with Dr. Diego noting that Plaintiff was stable on her ADD medication.  (AR
14 719, 736, 737, 775, 777.)

15       In addition, the ALJ found the opinion is contradicted by the generally adequate physical
16 functioning that Plaintiff exhibited in other examinations during the adjudicative period that had
17 been discussed within the opinion.  (AR 27.)  Plaintiff argues that the ALJ ignored Dr. Senegor's
18 opinion that Plaintiff will need surgery in the future.  Defendant counters that Dr. Senegor himself
19 characterized Plaintiff's treatment as conservative and the fact that Plaintiff might need surgery in the
20 future does not establish that Plaintiff is currently disabled.  The ALJ specifically pointed to Dr.
21 Senegor's records finding that they generally noted adequate physical functioning.  (AR 24, 27.)  Dr.
22 Senegor saw Plaintiff on February 10, 2016, and she complained that she was incapacitated in her
23 day to day activities.  (AR 303.)  She was noted to be in some distress.  (AR 303.)  On
24 musculoskeletal examination, Dr. Senegor noted, that tip-toe and heel-walking were normal.  (AR
25 304.)  Plaintiff had normal muscle tone without any sign of atrophy.  (AR 304.)  Range of motion in
26 the lumbar spine was good and straight leg raising was negative.  (AR 304.)  On mental examination,
27 Plaintiff was alert oriented and appropriate.  (AR 304.)  Mentation, mental status, speech and
28 memory were normal.  (AR 304.)  Gait and coordination were normal and sensory examination

was negative.  (AR 304.)  Plaintiff's muscle strength was 5/5 throughout and deep tendon reflexes were 1+ throughout.  (AR 304.)  Babinski's sign and Hoffmann's sign were absent (no abnormal findings).  (AR 305.)  Dr. Senegor opined that Plaintiff had early degenerative disc disease and very early lumbar stenosis for her relatively young age.  (AR 305.)  This suggested that she had a genetic predisposition toward early aging in her spine and predisposes her to multiple spine surgeries throughout her lifetime.  (AR 305.)  Dr. Senegor suggested a right L5-4 and L5-S1 lateral recess decompression be performed with minimally invasive technique.[4]  (AR 305.)  While Dr. Senegor opined that Plaintiff would at some time require spinal surgery, the ALJ's finding that his examination findings were relatively normally is supported by the record.

The ALJ also considered Dr. Rios findings on his April 14, 2016 comprehensive medical examination.  (AR 26, 323-327.)  Plaintiff reported that she lived with her family and children, remained capable of driving a vehicle, was capable of helping some of the household chores, including meal preparation, and was independent of her activities of daily living.  (AR 323.)  Dr. Rios found that Plaintiff was not in obvious distress.  (AR 324.)  She was able to move around the examination room with minimal difficulties and was capable of getting on and off the examination table independently.  (AR 324.)

On examination, Plaintiff had no cyanosis, clubbing, or edema of the extremities.  (AR 325.)  Gait, station, and heel-toe and tandem gait was normal.  (AR 325.)  Romberg test was negative.  (AR 325.)  Straight leg raising was negative up to 80 degrees bilaterally from both the seated and supine positions.  (AR 326.)  Plaintiff had areas of tenderness along the mid and lower lumbar spine.  (AR 326.)  There was also tenderness along the left paralumbar spine but no spasms were observed and there were no findings of nerve root compression on provocative maneuvers.  (AR 326.)  Motor strength was 5/5 throughout the upper and lower extremities.  (AR 326.)  Grip strength was normal at 5/5.  (AR 326.)  Muscle bulk and tone were normal without any atrophy or spasms.  (AR 326.)  Light touch and pin prick were grossly intact throughout the upper and lower extremities.  (AR 326.)  Deep tendon reflexes were 2 in the bilateral upper and

---

[4] There is no evidence in the record that Plaintiff had the recommended procedure.

1  lower extremities.  (AR 326.)  Dr. Rios found that Plaintiff had chronic back pain and describes

2  pain that shoots down to the right leg.  (AR 326.)  On examination he found tenderness at the

3  mid and lower lumbar spine and along the paralumbar area without any accompanying spasms or

4  findings of nerve root compromise on provocative maneuvers.  (AR 326.)

5       The ALJ also considered the examinations conducted in the emergency room.  (AR 24,

6  27.)  On March 5, 2015, Plaintiff was seen in the emergency room complaining of chronic back

7  pain.  (AR 1065.)  She was alert and in no acute distress.  (AR 1065.)  Plaintiff had a normal

8  mental status, mood, and affect.  (AR 1065.)  Musculoskeletal examination notes normal range

9  of motion, atraumatic.  (AR 1065.)  Plaintiff had a normal gait with no foot drop.  (AR 1065.)

10  Straight leg raise was negative.  (AR 1065.)  Plaintiff had a negative x-ray of the lumbar spine.

11  (AR 1066.)

12       Plaintiff was seen on November 25, 2015, after she fell at K-Mart.  (AR 1067.)  Plaintiff

13  stated that she turned quickly on her right foot and fell backwards.  (AR 1067.)  She bumped her

14  head but did not lose consciousness.  (AR 1067.)  Plaintiff was found to be alert and in no acute

15  distress.  (AR 1067.)  Back examination showed normal range of motion, atraumatic.  (AR

16  1067.)  Plaintiff's mental status and speech were normal.  (AR 1067.)  Her extremities appeared

17  normal and all range of motion was normal.  (AR 1067.)  There was swelling and inflammation

18  to the ankle and range of motion to the left ankle was limited by pain.  (AR 1067.)  Plaintiff had

19  an x-ray to her right ankle that showed no evidence of fracture.  (AR 1069.)  She was diagnosed

20  with an acute ankle sprain.  (AR 1068.)

21       On November 9, 2016, Plaintiff was seen after a rear end collision.  (AR 1075.)  Plaintiff

22  ambulated with a normal gait.  (AR 1082.)  She was alert, oriented, and in mild distress.  (AR

23  1084.)  Her neck was immobilized in a cervical collar and on palpation her lower cervical area

24  was very tender in both the midline and paraspinal areas.  (AR 1084.)  Back examination notes

25  she was mildly tender in the mid lumbar spine diffusely.  (AR 1085.)  She had no edema to the

26  extremities and no calf tenderness.  (AR 1085.)  Plaintiff was awake, alert, and oriented, with

27  normal cranial nerve motor and sensory function.  (AR 1085.)  A CT of the cervical spine noted

28  a defect in the right C2 lamina with an adjacent well-corticated osseous fragment favored to be

1   chronic due to the well-corticated appearance of the fragment and the lack of surrounding

2   hematoma/posttraumatic changes of the soft tissues.  (AR 1087.)  There was no definite acute

3   fracture or subluxation identified.  (AR 1087.)  The doctor noted, "She is clearly tender in the

4   lower cervical spine around G7-T1.  She is not tender in the upper cervical spine either in the

5   midline or in the adjacent soft tissues.  She is unaware of any old injury.  Given all of the above,

6   I believe this CT result correlates clinically to an old or congenital abnormality and not a new

7   fracture.  She was therefore taken out of the cervical collar."  (AR 1085.)

8          Finally, the ALJ considered the pain management records of Dr. Elahi.  (AR 24, 27.)

9   Plaintiff saw Dr. Elaji on May 4, 2017 and reported that the injection had helped for six months

10  but she was now having pain in her right leg.  (AR 1131.)  Plaintiff was found not to be in

11  distress and she had normal gait and balance.  (AR 1132.)  Reflexes and sensation of the upper

12  and lower extremities were normal bilaterally.  (AR 1132.)  The record notes that straight leg

13  raising was normal to the bilateral lower extremities, but contrarily states that straight leg raising

14  was position on the right.  (AR 1132.)  Posture and range of motion were normal.  (AR 1132.)

15  Muscle mass was normal in both the upper and lower extremities, bilateral.  (AR 1132.)  Muscle

16  strength was normal.  (AR 1132.)  Palpation was normal and the sacroiliac joint was normal.

17  (AR 1132.)

18         Plaintiff was seen again on June 16, 2017, and was noted not to be in distress.  (AR

19  1128.)  Examination findings remained the same and Plaintiff received a lumbar epidural

20  injection.  (AR 1129.)

21         Plaintiff returned on August 18, 2017, and stated that she had developed sciatica to the

22  right side after transferring a mattress the prior week.  (AR 1125.)  Examination findings remain

23  the same and an injection was recommended.  (AR 1126.)

24         Plaintiff was seen on September 13, 2017 for a pain management follow up and was

25  noted not to be in distress.  (AR 1122.)   Musculoskeletal examination was again normal, other

26  than positive straight leg raise on the right.  (AR 1123.)  Plaintiff received an epidural injection.

27  (AR 1123.)

28         Substantial evidence supports the ALJ's finding that overall Plaintiff had very few

clinical signs such as diminished ranges of motion or abnormal gait that were documented in the treatment records and that her musculoskeletal system was frequently noted to be normal.  (AR 24.)  A treating physician's opinion is entitled to controlling weight on the issue of the nature and severity of the claimant's impairment where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  20 C.F.R. § 404.1527(c)(2).  "If there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.' "  Orn, 495 F.3d at 632 (citing 20 C.F.R. § 404.1527(d)(2).  The ALJ did not err by failing to provide controlling weight to the opinion of Dr. Diego after finding that it was inconsistent with her treatment notes and other medical evidence in the record.

The ALJ also found that Dr. Diego's opinion was inconsistent because there were no positive findings from a nerve conduction study, an electromyogram, or a pulmonary function test.  (AR 27.)  Plaintiff argues that the ALJ is playing doctor by rejecting Dr. Diego's opinion because it was not supported by a nerve conduction study, an electromyogram, or a pulmonary function test.  Plaintiff argues that the ALJ is mischaracterizing the evidence by implying that and that there were negative findings of nerve root involvement and that the fact that such testing was not done is indicative of a lack of symptomology.  Defendant counters that the ALJ acknowledged that there was no such testing in the record which would be expected given Plaintiff's subjective complaints.  Here, the ALJ found that there was a lack of support in the objective medical evidence for the severe limitations opined by Dr. Diego.  As discussed above, the ALJ considered that the medical record demonstrated that on examination, other than tenderness and occasional positive straight leg raise test results, Plaintiff's physical examinations were generally normal.  The ALJ could reasonably find that the lack of testing to support Dr. Diego's opinion regarding Plaintiff's limitations indicated that the opinion was entitled to lesser weight than other opinions in the record that were supported by the medical findings.

The ALJ also considered that the treatment for Plaintiff's spinal condition consisted primarily of pain medications and injections and the lack of more aggressive treatment, such as

1   nerve ablation, spinal cord stimulation, or surgical intervention shows that this condition is not
2   debilitating.  (AR 24.)  It is permissible for the ALJ to make a negative inference from the fact
3   that Plaintiff did not seek a more aggressive treatment program.  Tommasetti v. Astrue, 533 F.3d
4   1035, 1039 (9th Cir. 2008).  Here, the ALJ did not merely rely on the conservative treatment, but
5   identified the treatment that could have been provided.  The ALJ properly considered that
6   Plaintiff did not pursue more aggressive treatment such as nerve ablation and that no doctor had
7   recommended surgery for Plaintiff's condition.

8       Plaintiff argues that the ALJ erred by finding that she only received routine and
9   conservative treatment for her spine disorder arguing that injections and narcotic medications are
10  not conservative treatment.  Defendant counters that even Dr. Senegor characterized the
11  treatment Plaintiff received as conservation.  However, even if the ALJ erred by finding that the
12  treatment was conservative any error would be harmless as the ALJ provided other specific and
13  legitimate reasons for the weight provided to Dr. Diego's opinion.  Burch, 400 F.3d at 679;
14  Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012).

15      The ALJ also found that Dr. Diego's opinion was inconsistent with Plaintiff's activities
16  of daily living as reported in the function report and consultative examination reports which
17  indicate some physical capacity.  Plaintiff argues that the ALJ erred because he did not explain
18  how her limited activities show that she is able to sustain work activity eight hours a day, five
19  days a week.  Defendant counters that the Ninth Circuit does not require that daily activities
20  demonstrate such ability to reject Dr. Diego's opinions.  Here, the ALJ properly considered and
21  found that Plaintiff's self-reported daily activities were inconsistent with the extreme limitations
22  opined by Dr. Diego.

23      The ALJ found that according to the function report and consultative examination
24  reports, while Plaintiff needs reminders she is essentially independent in personal care and is
25  generally able to pay bills, help with household chores, and help take care of her young children.
26  (AR 26.)  Plaintiff has the ability to drive.  (AR 26.)  She can live with and spend time with
27  family, go out alone, get along with authority figures adequately, and use a computer.  (AR 26.)
28  Plaintiff has good relationships with her children and one of her siblings.  (AR 26.)

The ALJ considered that on September 15, 2014, Plaintiff reported to Dr. Spivey that she was babysitting in volunteer work.  (AR 291.)  Plaintiff drives and takes care of her two children.  (AR 292.)  She takes care of the house and occasionally gets help from her mother and husband.  (AR 291.)  Plaintiff is able to pay the bills and can make appointments.  (AR 291.)

The ALJ also considered Plaintiff's February 4, 2016 Adult Function Report.  (AR 219-227.)  Plaintiff reported that she just stays at home in her pajamas doing nothing.  (AR 219.)  She does not do anything.  (AR 220.)  Plaintiff has a cup of coffee and just sits.  (AR 220.)  Plaintiff does anything to keep from taking her son to school.  (AR 220.)  Plaintiff checks on her pets, but her four year old son feeds and waters them.  (AR 220.)  She does not like to do personal care, but she can take care of her personal care.  (AR 220.)  When Plaintiff goes somewhere she will stay in her pajamas.  (AR 220.)  Her husband and daughter do all the cooking in the house.  (AR 220.)  She does the laundry once a week and will let the dogs in and out of the house.  (AR 220.)  She will take the dogs out for ten minutes once or twice a day.  (AR 220.)  She does not do any yardwork because she does not like to and would have to get dressed.  (AR 221.)  Plaintiff drives a car but does not like to and it hurts her back to drive for a long time.  (AR 221.)  Plaintiff goes shopping in stores when she cannot find someone else to go for her.  (AR 221.)  Plaintiff is able to handle her finances and pay the bills.  (AR 221.)

Plaintiff's hobbies are her children, animals, and the computer.  (AR 222.)  She spends time at home with her family and chatting with friends on the computer.  (AR 222.)  She regularly goes to her children's school and doctor appointments.  (AR 222.)  Her ability to lift, squat, bend, stand, walk, sit, kneel, talk, climb stairs, memory, complete tasks, concentration, and follow instructions are affected.  (AR 224.)  Plaintiff cannot kneel or squat at all.  (AR 224.)  She is able to stand, walk, sit or climb stairs for ten minutes.  (AR 224.)  She can walk for ten minutes before she needs to rest.  (AR 224.)  After that she will not walk unless she has to use the bathroom.  (AR 224.)  Plaintiff can pay attention for thirty minutes or less.  (AR 224.)  It is difficult for her to follow written instructions, but she is able to follow spoken instructions better.  (AR 224.)  Plaintiff gets along well with authority figures.  (AR 224.)  She does not handle stress well and will have a panic attack if she has to deal with changes in her routine.  (AR 225.)  Her

pain medications make her sleepy.  (AR 226.)

On March 25, 2016, Plaintiff reported to Dr. Matthew that she essentially stays at home all day.  (AR 317.)  She is able to bathe.  (AR 317.)  She claims that she does not do any of the cooking but rest and watches television.  (AR 317.)  She does computer work.  (AR 317.)  Plaintiff takes care of her children and is able to perform all activities of daily living without any assistance.  (AR 318.)

On April 14, 2016, 2016, Plaintiff reported to Dr. Rios that she is capable of driving and that is able to help with some of the household chores, including meal preparation.  (AR 323.)  She is independent with all her activities of daily living.  (AR 323.)

While Plaintiff's testimony shows that her activities are limited, substantial evidence in the record supports the ALJ's finding that her daily activities are inconsistent with Dr. Diego's extreme limitations.  For example, Dr. Diego opined that Plaintiff could never lift any weight or twist or bend, but the ALJ could reasonably infer that this was inconsistent with Plaintiff's abilities to care for her young son, do laundry, help with the household chores, and do meal preparation.

The ALJ provided specific and legitimate reasons to reject the opinion of Dr. Diego that are supported by substantial evidence in the record.

2.    Mental Capacity Opinion

Plaintiff contends that the ALJ erred by rejecting the Dr. Diego's opinions regarding her mental functioning and did not provide specific and legitimate reasons to reject the opinions.  Defendant counters that the ALJ properly considered the opinions and provided specific and legitimate reason to reject the limitations opined.

The ALJ considered that Plaintiff had received specialized mental health treatment for her mental symptoms.  (AR 25.)  The medical record during the adjudicative period noted that Plaintiff was sometimes observed to be depressed or anxious.  (AR 25, 371, 378, 382, 396, 401, 406, 431, 450, 457, 462, 736, 746.)  However, the ALJ found that the treatment records reflect that she generally had appropriate mood and affect, cooperative behavior, normal insight and judgment, and normal attention span, and concentration.  (AR 25.)  As discussed above,

1  substantial evidence supports the ALJ's finding that despite the finding that Plaintiff was anxious

2  and depressed, psychiatric examination findings were generally normal.

3        Plaintiff argues that the ALJ ignored Dr. Diego's overwhelming evidence of record

4  documenting Ms. Knight's objective findings of severe depression, ADHD and anxiety such as

5  multiple documentation of her "appearance" as "disheveled;" her mood as "anxious, irritable and

6  depressed;" her reasoning, impulse control, judgment and insight as "poor;" with suicidal ideation

7  and a GAF of 45 to 50 (indicative of serious symptoms); her anxious/fearful thoughts; her depressed

8  mood her difficulty concentrating; and difficulty staying asleep. (e.g., AR 544-547; 554-561, 563-

9  567).

10       However, Plaintiff cites to records from November 2012 through February 2013, more than

11 two years before the adjudicatory period.  (AR 543-547, 554-567.)  The later records do not contain

12 such findings and document normal mental status examinations.  (AR 459, 463, 468, 476, 480, 489,

13 493.)  There is substantial evidence in the record that during the adjudicatory period Plaintiff

14 generally had normal mental status examinations.  (AR 304, 354, 356, 364, 366, 371, 378, 382, 393,

15 396, 401, 406, 719, 736, 746, 775, 813, 1063, 1065, 1067.)  On September 29, 2015, Plaintiff also

16 reported that her depressive symptoms were managed with medication and a positive response.  (AR

17 413.)  She reported being a stay at home mom who was fostering dogs from the pound.  (AR 413.)

18 On August 4, 2016, Plaintiff reported that her depression symptoms were managed with her

19 medication.  (AR 727.)  Further, Plaintiff reported her anxiety was improved on her medication and

20 she her ADHD was noted to be stable.  (AR 728, 737, 777.)

21       In addition, the ALJ noted that Dr. Senegor found that Plaintiff had normal memory on

22 February 10, 2016, and Dr. Elahi noted that Plaintiff was pleasant on October 6, 2016.  (AR 25,

23 304, 1135.)

24       The ALJ found that overall Plaintiff demonstrated adequate mental functioning during a

25 mental consultative examination conducted by Dr. Spivey on September 15, 2014.  (AR 25.)

26 Plaintiff had a neutral mood and a full affect.  (AR 25, 292.)  Plaintiff's psychomotor activity

27 was normal and she was forthcoming and cooperative.  (AR 25, 292.)  Her speech was clear and

28 articulate and she was fully oriented.  (AR 25, 292.)  Plaintiff had unremarkable thought content

and linear goal-directed thought process.  (AR 25, 292.)  She was able to recall at least 2 out 3 items, spell a word backwards, interpret a simple proverb, and identify the president and governor.  (AR 25, 292.)  Her insight and judgment were good.  (AR 25, 292.)

The ALJ also found that Plaintiff demonstrated adequate mental functioning during a mental consultative examination conducted by Dr. Matthew on March 25, 2016.  (AR 25.) Plaintiff had good grooming and adequate hygiene.  (AR 25, 318.)  Plaintiff's affect was dysthymic and constricted but she exhibited normal attitude, cooperative behavior, and good eye contact.  (AR 25, 318.)  Her speech was a little slow but was otherwise normal in terms of tone, content, and volume.  (AR 25, 318.)  There was no evidence of hallucinations, delusions, distortions, preoccupations, suicidal intent, or homicidal ideation.  (AR 25, 318.)  Plaintiff was fully oriented.  (AR 25, 318.)  She was unable to do the digit span test backwards, or recall objects after a 5-minute delay but she could do the digit span test forwards, remember personal information, and recollect the last 3 presidents.  (AR 25, 318.)  She was unable to do the serial 3s or serial 7s test or spell a word forwards or backwards but she could do the serial 2s test in 3 steps.  (AR 25, 318.)  She had good insight into her condition.  (AR 25, 319.)

The ALJ also considered that Plaintiff has a history of psychiatric hospitalizations but she has not been hospitalized for psychiatric treatment since November 20, 2015.  (AR 25.)  She also has a history of receiving special education services; however according to treatment records dated September 19, 2015, and November 5, 2015, Plaintiff's ADHD medication is effective in improving her focus.  (AR 25, 377, 403.)

The ALJ considered Dr. Spivey's mental consultative examination conduced on September 15, 2014.  (AR 27.)  Dr. Spivey concluded that Plaintiff could follow simple instructions, maintain adequate pace and persistence for simple and repetitive tasks, maintain adequate attention and concentration, adapt to changes in job routine, withstand the stress of a routine workday, communicate effectively with others, and interact appropriately with coworkers supervisors and the public on a daily basis.  (AR 27, 293.)  The ALJ also consider the opinion of Dr. Matthew who conducted a mental consultative examination on March 25, 2016.  (AR 27.) Dr. Matthew concluded that Plaintiff had an adequate ability to perform simple and repetitive

1   tasks, accept instructions from supervisors, interact with coworkers and the public, perform work

2   activities on a consistent basis without special or additional instructions, maintain regular

3   attendance, complete a normal workday or workweek, and deal with usual work stress.  (AR 27,

4   319-320.)  The ALJ gave these opinions substantial weight finding them to be supported by the

5   generally adequate mental functioning that Plaintiff exhibited during the adjudicative period as

6   discussed above.  (AR 27.)  In addition, the ALJ found that the opinions were consistent with the

7   effectiveness of Plaintiff's medication and with the lack of evidence of extended or repeated

8   psychiatric hospitalization.  (AR 27.)  The ALJ found the opinions are consistent with Plaintiff's

9   generally adequate daily living activities and social activities as discussed above which indicate

10   some mental capacity.  (AR 27.)  Finally, the ALJ considered that Dr. Spivey and Dr. Matthew

11   have specialized expertise on mental impairments.  (AR 27.)

12       The ALJ considered Dr. Diego's May 26, 2016 Physical Medical Source Statement,

13   March 10, 2017 Physical Medical Source Statement, August 10, 2017 Mental Residual

14   Functional Questionnaire, and an undated, unsigned Medical Source Statement.[5]  (AR 421, 423-

15   424, 620-623, 624-626.)  The ALJ noted that Dr. Diego stated that Plaintiff was unable to

16   concentrate or focus, was incapable of even low-stress work, would be absent from work or

17   unable to complete a normal workday at least 5 days per month, and was precluded 10% to 15%

18   of the time from maintaining regular attendance, being punctual and completing a normal

19   workday or workweek, working at a consistent pace, getting along or working with others,

20   responding appropriately to changes in a routine work setting, dealing with normal work stress,

21   performing detailed tasks, traveling in unfamiliar places, using public, maintaining attention and

22   concentration for extended periods, setting realistic goals, and making plans independently of

23   others.  (AR 27-28; 421, 423-424, 620-623, 624-626.)

24       The ALJ considered the treatment records of Ms. O'Hare, Plaintiff's psychotherapist

25   from October 31, 2014 through January 15, 2015, who assessed her with a Global Assessment

26   Functioning ("GAF") score of 45, which reflected serious difficulty in social or occupational

27

28   [5] The ALJ considered an undated and unsigned mental medical source statement as if it was the opinion of Dr. Diego.  (AR 421.)

26

functioning in Plaintiff's psychotherapy.  (AR 28, 430-432, 448-451, 452-458.)  The ALJ found that the GAF was internally inconsistent with the treatment notes from the source.  (AR 28.)  Plaintiff points to the records from November 2013 to January 2014, but any findings by a different provider approximately a year prior to Ms. O'Hare's assessment do not call into question the ALJ's finding that Ms. O'Hare's treatment records do not document significant findings that would support the GAF score assessed.

The ALJ found that Dr. Diego's opinion is inconsistent with the generally adequate mental functioning that Plaintiff exhibited during the adjudicative period as has been discussed throughout the opinion.  (AR 28.)  At the time that Dr. Diego wrote her opinions, she had consistently found since February 2016 that Plaintiff had normal attention span and concentration despite noting that Plaintiff was anxious.  (AR 393, 746, 813.)  These findings continued after the March 10, 2017 opinion with Dr. Diego noting that Plaintiff was stable on her ADD medication.  (AR 719, 736, 737, 775, 777.)  Substantial evidence, including the normal concentration and attention findings support the ALJ's finding that Plaintiff had generally normal mental examinations which conflict with Dr. Diego's opinion.  The ALJ need not accept the opinion of any physician that is unsupported by clinical findings.  Thomas, 278 F. at 957.  The ALJ provided specific and legitimate reasons to reject the opinion of Dr. Diego that are supported by substantial evidence in the record.

The ALJ also found that Dr. Diego's opinion was inconsistent with the effectiveness of the claimants ADHD medication and the lack of evidence of extended or repeated psychiatric hospitalization.  (AR 28.)  Plaintiff again argues that the ALJ ignored evidence in the record documenting Plaintiff's subjective complaints or records prior to the date Plaintiff alleges she became disabled.  But, Plaintiff's subjective complaints are not objective findings.  The ALJ did not err by relying on the objective examination findings in the record in considering the weight to be provided to Dr. Diego's opinions.

The ALJ also found the opinion is inconsistent with Plaintiff's generally adequate daily living activities and social activities as discussed above which indicate some mental capacity.  (AR 28.)  Plaintiff argues that this is not a specific and legitimate reason to reject Dr. Diego's

1   opinion.  While the Court agrees that the finding that Plaintiff had some mental capacity is not by

2   itself sufficient and is problematic as stated, looking at the opinion as a whole, supports the

3   ALJ's finding that Plaintiff retained mental capacity beyond the limitations opined by Dr. Diego.

4   Specifically, the ALJ considered that Plaintiff is essentially independent in personal care and is

5   generally able to pay bills help with household chores and help take care of her young children.

6   (AR 26.)  Plaintiff has the ability to drive.  (AR 26.)  She can live with and spend time with

7   family, go out alone, get along with authority figures adequately, and use a computer.  (AR 26.)

8   Plaintiff has good relationships with her children and one of her siblings.  (AR 26.)  Finally, to

9   the extent that this finding could be considered error it would be harmless as the ALJ provided

10  other specific and legitimate reasons to reject Dr. Diego's opinion.  <u>Burch</u>, 400 F.3d at 679;

11  <u>Molina</u>, 674 F.3d at 1115.

12          3.      <u>ALJ Did Not Err in Addressing Dr. Diego's Opinions</u>

13          Here, the ALJ was confronted with multiple conflicting opinions on Plaintiff's mental

14  and physical capacity.  It is up to the ALJ to determine credibility, resolve conflicts in testimony,

15  and resolve ambiguities in the record.  <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998).

16  Plaintiff accuses the ALJ of playing doctor and argues for a different result.  But, the ALJ

17  properly set out a detailed and thorough summary of the facts and conflicting clinical evidence,

18  and stated his interpretation of the evidence and made specific findings.  <u>Magallanes v. Bowen</u>,

19  881 F.2d 747, 751 (9th Cir. 1989).  "Where evidence is susceptible to more than one rational

20  interpretation, it is the ALJ's conclusion that must be upheld."  <u>Burch</u>, 400 F.3d at 679.  The

21  Court finds that the ALJ provided specific and legitimate reasons to discredit the opinions of Dr.

22  Diego that are supported by substantial evidence in the record.

23      **B.      Plaintiff's Credibility**

24          Plaintiff also argues that the ALJ erred by not providing clear and convincing reasons to

25  find her symptom testimony not credible.  Defendant counters that the ALJ provided numerous

26  legally sufficient reasons to find Plaintiff's symptom testimony not credible.

27          "An ALJ is not required to believe every allegation of disabling pain or other non-

28  exertional impairment."  <u>Orn</u>, 495 F.3d at 635 (internal punctuation and citations omitted).

1   Determining whether a claimant's testimony regarding subjective pain or symptoms is credible,

2   requires the ALJ to engage in a two-step analysis.  Molina, 674 F.3d at 1112.  The ALJ must first

3   determine if "the claimant has presented objective medical evidence of an underlying impairment

4   which could reasonably be expected to produce the pain or other symptoms alleged."

5   Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations

6   omitted).  This does not require the claimant to show that her impairment could be expected to

7   cause the severity of the symptoms that are alleged, but only that it reasonably could have caused

8   some degree of symptoms.  Smolen, 80 F.3d at 1282.

9       Then "the ALJ may reject the claimant's testimony about the severity of those symptoms

10  only by providing specific, clear, and convincing reasons for doing so."  Brown-Hunter v.

11  Colvin, 806 F.3d 487, 488–89 (9th Cir. 2015).  "The ALJ must specifically make findings that

12  support this conclusion and the findings must be sufficiently specific to allow a reviewing court

13  to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not

14  arbitrarily discredit the claimant's testimony."  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir.

15  2004) (internal punctuation and citations omitted).  Factors that may be considered in assessing a

16  claimant's subjective pain and symptom testimony include the claimant's daily activities; the

17  location, duration, intensity and frequency of the pain or symptoms; factors that cause or

18  aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other

19  measures or treatment used for relief; functional restrictions; and other relevant factors.

20  Lingenfelter, 504 F.3d at 1040; Thomas, 278 F.3d at 958.  In assessing the claimant's credibility,

21  the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the

22  claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other

23  testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately

24  explained failure to seek treatment or to follow a prescribed course of treatment. . .."

25  Tommasetti, 533 F.3d at 1039 (quoting Smolen, 80 F.3d at 1284).  The district court is

26  constrained to review those reasons that the ALJ provided in finding the claimant's testimony not

27  credible.  Brown-Hunter, 806 F.3d at 492.

28       In addressing Plaintiff's testimony, the ALJ considered,

> The claimant complains of chronic back pain that radiates to the lower extremities causing pain and numbness.    She also complains of shortness of breath, depression, anxiety, suicidal ideation, cognitive problems, anhedonia, decreased energy, social withdrawal, irritability, and sleep disturbance.    She allegedly has difficulty engaging in physical exertion performing postural activities, being around people, interacting with others, handling stress, completing tasks, following instructions, remembering information, concentrating, and staying focused.    She allegedly needs to lie down frequently throughout the day.    Her medications cause fatigue, sleepiness, drowsiness, shakiness, and upset stomach Exhibits IE, 3E, 4E, 7E, 10F and hearing testimony.

(AR 24.)

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and the other evidence in the record.  (AR 24.)

### 1.    Inconsistent Statements Regarding Activities

The ALJ found that although Plaintiff alleges problems with concentration and attention, she is able to drive a car which requires a considerable degree of concentration and can use a computer which requires some concentration.  (AR 22.)  Further, the ALJ found that Plaintiff retained the concentration to pay bills, help with household chores and help take care of her young children.  (AR 22.)  The ALJ found that while Plaintiff testified that she required much assistance with her activities of daily living this is inconsistent with her functions reports and her reports to the consultative examiners.  (AR 26.)

At the October 26, 2017 hearing, Plaintiff testified that at least once a month or more she needs help with her personal care.  (AR 46.)  She tries to do household chores but her daughter does the majority of the chores.  (AR 47.)  Plaintiff does not cook or do laundry her daughter does it all.  (AR 47.)  Plaintiff also testified that she does not do any chores around the house. (AR 48.)  She used to do dishes but she is not able to stand so her daughter does them.  (AR 48.) She does not shop and drive her children to the grocery store so they can run in and pick up the groceries.  (AR 48-49.)  Plaintiff does not get dressed during the day and does not go out of the house.  (AR 51.)  She is not able to remember things well and her mother has to take care of the bills.  (AR 51.)  She cannot concentrate very well or at all.  (AR 51, 54.)  The ALJ found that

1  although Plaintiff needs reminders, she is essentially independent in her personal care and is

2  generally able to pay bills, help with household chores, and help take care of her young children.

3  (AR 26.)  Plaintiff also has the ability to drive, lives and spends time with her family, goes out

4  alone, gets along with authority figures adequately, and uses a computer.  (AR 26.)  She has a

5  good relationship with her children and one of her siblings.  (AR 26.)  The Court considers that

6  evidence which that ALJ cites to in his opinion.

7         On September 15, 2014, Plaintiff reported that she has been babysitting in volunteer

8  work.  (AR 291.)  She is able to drive, take care of her two children and keep her house, although

9  she occasionally will get some help from her mother or husband.  (AR 292.)  Plaintiff is able to

10  pay the bills and make appointments.  (AR 292.)

11         On February 4, 2016, Plaintiff reported that she does not like to do her personal care, but

12  is able to.  (AR 220.)  Plaintiff does laundry once a week and takes the dogs out for 10 minutes

13  once or twice a day.  (AR 221.)  She goes shopping in stores.  (AR 221.)  She is able to handle

14  money and pay her bills.  (AR 222.)  She regularly goes to her children's schools and doctors

15  appointments.  (AR 223.)  She can pay attention for thirty minutes or less.  (AR 223.)

16         On March 25, 2016, Plaintiff reported that she has a good relationship with her children

17  and one of her siblings.  (AR 317.)  She is able to bathe and do computer work.  (AR 317.)  She

18  takes care of her children.  (AR 318.)  She is able to perform all her activities of daily living

19  without any assistance.  (AR 318.)

20         On April 14, 2016, Plaintiff reported that she drives a vehicle and is able to help with

21  some of the household chores including meal preparation.  (AR 323.)  She is independent with

22  all her activities of daily living.  (AR 323.)

23         The ALJ properly considered Plaintiff's inconsistent statements and the inconsistencies

24  between her stated abilities and her daily activities in determining that her symptom testimony

25  was not credible.  Robbins, 466 F.3d at 884 (conflicting or inconsistent statements can contribute

26  to an adverse credibility finding); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997),

27  as amended on reh'g (Sept. 17, 1997) (credibility determination can be based on conflicts

28  between the claimant's testimony and his own conduct, or on internal contradictions in that

1   testimony).

2       2.      Medical Evidence

3       The ALJ found that although Plaintiff had a long history of back pain and had back

4   tenderness and a positive straight leg test on occasion, there were very few clinical signs such as

5   diminished range of motion or abnormal gait documented in the record.  (AR 24.)  In fact, the

6   ALJ found that Plaintiff's musculoskeletal examinations were frequently noted to be normal with

7   a normal gait.   (AR 24.)  Plaintiff claims to have radicular symptoms to the lower extremities,

8   but the record contains no relevant positive findings from a nerve conduction study or an

9   electromyogram and she generally demonstrated normal neurologic function during the

10  adjudicative period and a normal gait.  (AR 24.)  Plaintiff demonstrated adequate physical

11  functioning during an internal medical examination on April 14, 2016.  (AR 25.)  While Plaintiff

12  received specialized mental health treatment for her mental symptoms the treatment records

13  demonstrate that she generally had had appropriate mood and affect, cooperative behavior,

14  normal insight and judgment, and normal attention span and concentration.  (AR 25.)  Plaintiff

15  demonstrated adequate mental functioning during consultative examinations on September 15,

16  2014, and March 25, 2016.  (AR 25.)

17      The determination that a claimant's complaints are inconsistent with clinical evaluations

18  can satisfy the requirement of stating a clear and convincing reason for discrediting the

19  claimant's testimony.  Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297

20  9th Cir. 1999).  The ALJ properly considered this evidence in weighing Plaintiff's credibility.

21  "While subjective pain testimony cannot be rejected on the sole ground that it is not fully

22  corroborated by objective medical evidence, the medical evidence is still a relevant factor in

23  determining the severity of the claimant's pain and its disabling effects."  Rollins v. Massanari,

24  261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

25      For the reasons discussed in addressing Dr. Diego's opinions, substantial evidence

26  supports the finding that the medical findings are relatively normal and are inconsistent with

27  Plaintiff's symptom testimony.  "Contradiction with the medical record is a sufficient basis for

28  rejecting the claimant's subjective testimony."  Carmickle v. Comm'r, Soc. Sec. Admin., 533

1  F.3d 1155, 1161 (9th Cir. 2008).

2          3.      Use of Assistive Device

3          The ALJ considered that while Plaintiff alleged that she used a wheelchair on occasion, it

4  had not been prescribed by any doctor and she does not use it all the time.  (AR 24.)  There is

5  little evidence in the record that she needs an assistive device.  (AR 24.)  As discussed above,

6  although Dr. Diego stated that Plaintiff may need an assistive device upon occasion no assistive

7  device was ever prescribed.    The ALJ also noted substantial evidence in the record

8  demonstrating that Plaintiff was generally found to have a normal gait during medical

9  examinations.  (AR 24.)  See Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (proper for

10 ALJ to consider that "the appellant had walked slowly and used a cane at the hearing, although

11 none of his doctors had ever indicated that he used or needed to use an assistive device in order

12 to walk.  In fact, two doctors had specifically noted that the appellant did not need such a

13 device.).

14         4.      Failure to Seek More Aggressive Treatment

15         The ALJ also noted that while Plaintiff received pain medications and injections, she did

16 not pursue more aggressive treatment, such as nerve ablation, spinal cord stimulation, or surgical

17 intervention shows that the condition is not debilitating.  (AR 24.)  The ALJ could reasonably

18 infer that Plaintiff's symptom testimony was not credible given her failure to seek more

19 aggressive treatment, especially here where Dr. Senegor had recommended a lateral

20 decompression and Dr. Diego recommended physical therapy which Plaintiff did not pursue.

21 (AR 305, 364, 720.)

22         5.      ALJ's Observations During Hearing

23         The ALJ also noted that Plaintiff showed no persuasive evidence of debilitating pain or

24 discomfort while testifying at the hearing.  (AR 26.)  The ALJ also observed that she was able to

25 respond to questions, interact appropriately, follow closely, and participate fully during the

26 hearing.  (AR 26.)

27         While the hearing was short-lived and cannot be considered a conclusive indicator
           of the claimants overall level of physical and mental problems on a day-to-day
28         basis, the apparent lack of serious physical or mental difficulties during the

33

hearing is somewhat inconsistent with the alleged severity of her symptoms.
(AR 26.)

The ALJ's observations of Plaintiff's functioning may not form the sole basis for discrediting her testimony. Orn, 495 F.3d at 639; Tonapetyan, 242 F.3d at 1148. But, the "ALJ's personal observations may be used only in 'the overall evaluation of the credibility of the individual's statements.' " Orn, 495 F.3d at 639 (quoting S.S.R. 96–7p at 8.) The ALJ properly considered that during the hearing Plaintiff did not demonstrate any debilitating pain or discomfort and was able to respond, interact, follow and participate during the hearing. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ provided clear and convincing reasons that are supported by substantial evidence to find that Plaintiff's symptom testimony was not credible.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in evaluating the opinions of Dr. Diego or in finding that Plaintiff's symptom testimony was not credible. Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Lauren Knight. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **July 1, 2020**

UNITED STATES MAGISTRATE JUDGE